UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TASHEEM GOLDSTON,

                          Plaintiff,

                                                        9:02-CV-1004
v.                                                      (TJM/GHL)

ALBANY COUNTY SHERIFF DEPARTMENT, *et al.*,

                          Defendants.
_____

APPEARANCES:                                OF COUNSEL:

TASHEEM GOLDSTON, 00-A-5151
   Plaintiff *Pro Se*
Fishkill Correctional Facility
P.O. Box 1245
Beacon, NY 12508

ROCHE CORRIGAN MCCOY & BUSH          ROBERT P. ROCHE, ESQ.
   Counsel for all Defendants other than
   Gervaish and Laventine
36 South Pearl Street
Albany, New York 12207

PHELAN, PHELAN & DANEK, LLP           MARIE F. DANEK, ESQ.
   Counsel for Defendants Gervaish and Laventine   TIMOTHY S. BRENNAN, ESQ.
302 Washington Avenue Extension, Suite 3
Albany, New York 12203

LAW OFFICE OF JASON P. AUSTIN          JASON P. AUSTIN, ESQ.
   Counsel for Defendants Gervaish and Laventine
928 Sacandaga Road
Scotia, New York 12302

GEORGE H. LOWE, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION**</u>

This action has been referred to the undersigned for Report and Recommendation by the

Honorable Thomas J. McAvoy, United States District Judge, pursuant to Local Rule 72.3(c) and

28 U.S.C. § 636(b).  Generally, in this *pro se* civil rights complaint brought under 42 U.S.C. §

1983, Inmate Tasheem Goldston ("Plaintiff") alleges that two dozen corrections officers and two

nurses violated Plaintiff's rights under various constitutional amendments and federal statutes

while he was incarcerated at the Albany County Correctional Facility ("Albany County C.F.") in

2000.  (Dkt. No. 1.)  Currently before the Court is a motion for summary judgment filed by the

two nurses, Jill Gervais and Robert Laventure ("Nurse Defendants").[1]  (Dkt. No. 66.)  Plaintiff

has failed to respond to this motion.  For the reasons discussed below, I recommend that the

Nurse Defendants' motion for summary judgment be granted.

## I.     BACKGROUND

Plaintiff was an inmate at Albany County C.F. from September of 1999 to September of

2000.  Before his conviction (for robbery in the second degree) on or about August 13, 2000,

Plaintiff was a pre-trial detainee at Albany C.F.  During a significant portion of his time at

Albany C.F., Plaintiff was incarcerated in the facility's Special Housing Unit (or "S.H.U.") due

to various disciplinary issues.  For example, on at least two occasions,[2] Plaintiff was involved in

physical altercations with other inmates.  Plaintiff alleges that, following both of these

---

[1]      Apparently, Plaintiff misspelled the named of Nurses Gervais and Laventure as
"Gervaish" and "Laventine."  (*Compare* Dkt. No. 1 *with* Dkt. No. 66, Part 8 [Aff. of R.
Laventure], Part 10 [Aff. of J. Gervais].)

[2]      The dates of these two altercations were February 6, 2000, and September 17,
2000.

altercations, and on four other dates,[3] he was assaulted by one or more of the twenty-five corrections officers named as Defendants in this action. Plaintiff also alleges that, following each of these six assaults, he was either provided no medical treatment or inadequate medical treatment by the Nurse Defendants. For example, Plaintiff complains that the Nurse Defendants failed to provide him with sufficient pain medication, failed to send him to an outside hospital, failed to refer him for psychological counseling, and failed to accurately report (and indeed intentionally misreported) the cause and extent of Plaintiff's injuries. (*See generally* Dkt. Nos. 1, 66.)

In this way, Plaintiff asserts two different categories of claims: (1) one category of claims alleging that twenty-five corrections officers unjustifiably assaulted him on six separate dates, and/or implemented a policy encouraging such (alleged) unjustifiable assaults, and/or conspired to cover up such (alleged) unjustifiable assaults, in violation of the First, Eighth and Fourteenth Amendments, and three federal statutes;[4] and (2) one category of claims alleging that the Nurse Defendants violated Plaintiff's rights under the Eighth and Fourteenth Amendments[5] by being deliberately indifferent to his serious medical needs arising from certain injuries sustained as a result of the (alleged) unjustifiable assaults by corrections officers, and by making "false written

---

[3]        These four other dates were March 1, 2000, March 14, 2000, April 2, 2000, and July 26, 2000.

[4]        These three statutes are 42 U.S.C. §§ 1981 and 1983, and the Americans with Disabilities Act.

[5]        It is unclear what federal statutes (if any) Plaintiff is attempting to invoke in asserting his claim that the Nurse Defendants violated his civil rights by falsely reporting the cause and extent of his medical injuries. However, because Plaintiff is proceeding *pro se*, and his action alleges civil rights violations, I liberally construe this claim as attempting to implicitly invoke 42 U.S.C. § 1985 (prohibiting conspiracies to interfere with a person's civil rights).

reports and/or fail[ing] to give truthful accounts of the cause and extent of plaintiff's injuries" following each alleged assault.  (Dkt. No. 1, ¶¶ 44-62.)

Generally, the Nurse Defendants move for summary judgment on two grounds.  First, they argue that Plaintiff has failed to establish (or even state) a claim under the Eighth Amendment because Plaintiff did not have a serious medical injury, and that, in any event, the treatment they provided Plaintiff was appropriate.  (Dkt. No. 66, Part 11 at 11-15.)  Second, they argue that Plaintiff has failed to establish (or even state) a claim that is cognizable under any constitutional amendment or federal statute, due to the fact that Plaintiff has adduced no evidence even suggesting that the Nurse Defendants made false reports and/or failed in any way with regard to their statements concerning Plaintiff's injuries.  (*Id*. at 15-16.)

## II.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a fact question exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citation omitted); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citation omitted).  However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

4

"If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party." Fed. R. Civ. P. 56(e) (emphasis added). "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). "Such a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that . . . the moving party is entitled to a judgment as a matter of law.'" *Champion*, 76 F.3d at 486 (quoting Fed. R. Civ. P. 56[c]).[6] Therefore, the Court must review the merits of the motion. *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001).

Where a plaintiff has failed to respond to a defendant's Rule 7.1 Statement of Material Fact, the facts as set forth in that Rule 7.1 Statement are accepted as true to the extent those facts are supported by the record.[7] A district court has no duty to perform an independent review of

---

[6] Local Rule 7.1(b)(3) recognizes this requirement (that the motion have merit) when it provides that "the non-moving party's failure to file or serve . . . [opposition] papers . . . shall be deemed as consent to the granting . . . of the motion . . . unless good cause is shown," only where the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein." N.D.N.Y. L.R. 7.1(b)(3).

[7] *See* Local Rule 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.") [emphasis in original]; *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245 (2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden . . . , the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g.*, *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

5

the record to find proof of a factual dispute.[8]  In the event the district court chooses to conduct

such an independent review of the record, any verified complaint filed by the plaintiff should

treated as an affidavit.[9]

However, to be sufficient to create a factual issue, an affidavit (or verified complaint)

must, among other things, be based "on personal knowledge."[10]  An affidavit (or verified

complaint) is not based on personal knowledge if, for example, it is based on mere "information

and belief" or hearsay.[11]  In addition, such an affidavit (or verified complaint) must not be

---

[8]    *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *accord, Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[9]    *See Patterson v. County of Oneida*, 375 F.2d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted]; Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if the . . . affidavits . . . show that there is no genuine issue as to any material fact . . . .").

[10]   Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom, Ferrante v. U.S.*, 516 U.S. 806 (1995).

[11]   *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be

conclusory.[12]  An affidavit (or verified complaint) is conclusory if, for example, its assertions

lack any supporting evidence or are too general.[13]

     Finally, even where an affidavit (or verified complaint) is based on personal knowledge

and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely

unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and

improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to

---

competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[12]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

[13]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

credit the allegations made in the complaint."[14]

## III.   ANALYSIS

Plaintiff has not responded to the Nurse Defendants' motion, despite having been given

an extension of time in which to do so, and despite having been notified that his failure to file

any opposition papers may result in dismissal, as required by *Champion*, 76 F.3d at 486.  (Dkt.

No. 67.)  Furthermore, I find that the factual assertions contained in the Nurse Defendants' Rule

7.1 Statement (Dkt. No. 66, Part 12) are supported by the evidence cited therein (i.e., to the

relevant portions of the Nurse Defendants' affidavits and exhibits, and Plaintiff's deposition

testimony) (Dkt. No. 66, Parts 2-10).  I decline (and I recommend that the district court decline)

---

[14]      *See, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 554-555 (2d Cir. 2005)
(affirming grant of summary judgment to defendants in part because plaintiff's testimony about
an alleged assault by police officers was "largely unsubstantiated by any other direct evidence"
and was "so replete with inconsistencies and improbabilities that no reasonable juror would
undertake the suspension of disbelief necessary to credit the allegations made in the complaint")
[citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45
(2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs'
deposition testimony regarding an alleged defect in a camera product line was, although specific,
"unsupported by documentary or other concrete evidence" and thus "simply not enough to create
a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789,
2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified
complaint, which recounted specific statements by defendants that they were violating his rights,
was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact
with regard to all but one of prisoner's claims, although verified complaint was sufficient to
create issue of fact with regard to prisoner's claim of retaliation against one defendant because
retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose
testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia
Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was
insufficient evidence to oppose defendants' motion for summary judgment where that testimony
recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence
or benign"), *aff'd*, 136 Fed. Appx. 383 (2d Cir. 2005) (unreported decision).

to perform an independent review of the entire record to find proof of a factual dispute.[15]  I

therefore accept the facts contained in Defendants' Rule 7.1(a)(3) Statement as true for purposes

of this motion.

      I note that, even if I were to perform an independent review of the entire record to find

proof of a factual dispute, I would conclude that no such factual dispute exists.  Granted, Plaintiff

has filed a verified Complaint in this matter (Dkt. No. 1).[16]  However, the factual assertions

contained in that verified Complaint either support Defendants' Rule 7.1 Statement or are of no

use in opposing that Rule 7.1 Statement due to some defect in that verified Complaint (e.g., the

factual assertions contained therein are not based on personal knowledge and/or are entirely

conclusory).[17]

      Finally, I agree with the legal arguments in favor of summary judgment advanced by the

Nurse Defendants in their memorandum of law (Dkt. No. 66, Part 11).  As a result, resolving all

---

[15]     *See*, *e.g.*, *Lee v. Alfonso*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *13 & n.7 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) ("Magistrate Judge Sharpe accepted the facts contained in Defendants' Rule 7.1(a)(3) Statement as true for purposes of these motions [since Plaintiff did not submit a response to that Rule 7.1 Statement in compliance with the Local Rules].  This Court will do likewise."), *aff'd*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *2 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) ("The Court declines to sift through the factual materials that Plaintiff has submitted in an effort to find factual support for his arguments.") [citations omitted].

[16]     Specifically, Plaintiff has inserted the following phrase at the end of his Complaint: "Sworn to under penalty of perjury that the foregoing is true and correct."  (Dkt. No. 1 at 18.)  He follows that phrase with his signature.  (*Id.*) While this signature is not followed by a stamp of a notary public, the phrase above it does substantially comply with the requirements for an "unsworn declaration," as set forth in 28 U.S.C. § 1746.  Thus, I find that Plaintiff has submitted a verified Complaint.

[17]     *See*, *supra,* Part II of this Report-Recommendation (discussing the requirements for an affidavit or verified complaint to create a factual issue on a motion for summary judgment).

9

ambiguities and drawing all reasonable inferences in favor of Plaintiff, I conclude that (1) the Nurse Defendants have met their burden of showing that there is no genuine dispute of material fact to be resolved at trial, (2) Plaintiff has failed to rebut that showing by coming forward with "specific facts showing that there is a genuine issue for trial," and (3) thus, the Nurse Defendants are entitled to a judgment as a matter of law.

While I do not believe it is necessary to repeat in this Report-Recommendation the legal arguments, and evidentiary showing, made by the Nurse Defendants in their motion papers, I do believe that it is appropriate to briefly summarize the applicable law and the undisputed material facts.

### A.      Claim of Inadequate Medical Care

The Nurse Defendants generally recite the correct legal standard that governs Plaintiff's claims of inadequate medical care against the Nurse Defendants.  Whether those claims arise under the Fourteenth Amendment (applicable to pretrial detainees) or the Eighth Amendment (applicable to prisoners), Plaintiff must show two things: (1) that Plaintiff had a sufficiently serious medical (or psychological) need; and (2) that the Nurse Defendants were deliberately indifferent to that serious medical (or psychological) need.[18]

However, I would make one revision to the Nurse Defendants recitation of the law.  It appears that there exists a slight difference between claims for deliberate indifference brought under the Eighth Amendment and such claims brought under the Fourteenth Amendment.

---

[18]      *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) [citations omitted]; *Bourbon v. Rodney*, 99-CV-0769, 2003 WL 21058177, at *10 (N.D.N.Y. March 6, 2003) (Sharpe, M.J.); *Llorente v. Rozeff*, 99-CV-1799, 2001 WL 474261, at *2-3 (N.D.N.Y. Apr. 12, 2001) (Munson, J.); *Wicks v. Qualtere*, 95-CV-0426, 1997 WL 176338, at *3 (N.D.N.Y. Apr. 4, 1997) (Pooler, J.).

Specifically, while the standard for assessing deliberate indifference (i.e., the second part of the above two-part test) under the Eighth Amendment is *subjective*, the standard for assessing deliberate indifference under the Fourteenth Amendment is *objective*.[19]  Under the circumstances of this case, however, I find this distinction to be academic since, regardless of which standard is applied to the second part of the above two-part test, the Nurse Defendants were not "deliberately indifferent" to any serious medical (or psychological) need.

### 1.    Serious Medical Need

In support of their argument that all but one (or perhaps two) of Plaintiff's injuries were not "sufficiently serious" for purposes of the Eighth and Fourteenth Amendments, the Nurse Defendants correctly rely on Plaintiff's deposition testimony, Defendant Laventure's affidavit testimony, Defendant Gervais's affidavit testimony, and Plaintiff's medical records.  (Dkt. No. 66, Part 11 at 13-16.)

Although the Nurse Defendants generally reference, in their memorandum of law, the factual assertions made by Plaintiff in his verified Complaint about the nature and extent of his injuries, the Nurse Defendants do not appear to treat sworn factual assertions as evidence.  As I stated above, even if I were to treat those sworn factual assertions as evidence, I would find that those factual assertions (to the extent they are material to Defendants' motion) either actually support Defendants' Rule 7.1 Statement or are of no use in opposing that Rule 7.1 Statement due

---

[19]      *See*, *e.g.*, *Weyant*, 101 F.3d at 856 ("In the context of a claim under the Eighth Amendment, the standard for assessing deliberate indifference is a subjective one," while "this Court [has] used an objective standard" for assessing deliberate indifference under the Fourteenth Amendment) [citation omitted]; *Wicks*, 1997 WL 176338, at *3 (second prong of two-part test for deliberate indifference under Fourteenth Amendment is objective, not subjective) [citation omitted]; *but see Bourbon*, 2003 WL 21058177, at *10 (second prong of Fourteenth Amendment test is subjective), *accord*, *Llorente*, 2001 WL 474261, at *2-3.

to defects in the verified Complaint.  Generally, the most common defect that I observe is that the factual assertions are either entirely conclusory or they are so unsubstantiated, self-contradictory, and/or implausible that no reasonable juror would undertake the suspension of disbelief necessary to credit them.[20]

Briefly, the evidence of record establishes the following undisputed facts:

• Plaintiff's injuries from the alleged assault on **February 6, 2000**, consisted of (1) a swollen nose and a bruised face (which did not involve any fractures or bleeding), and (2) complaints of pain in his jaw, neck, ribs and back; these injuries healed within two weeks of the alleged assault;

• Plaintiff's injuries from the alleged assault on **March 1, 2000**, consisted of (1) some minor lumps and bruises (if any) on his head, face and wrists, (2) some "friction burns" or abrasions on his knees and thighs, and a bloody lip (but no need for stitches), and (3) complaints of pain in his lower neck, the back of his head, and parts of his body; these injuries healed within a month of the alleged assault (although Plaintiff asserts that his wrist still gives him some discomfort);

• Plaintiff's injuries from the alleged assault on **March 14, 2000**, consisted of (1) some minor bruises and/or minor cuts on his face, neck and ear, and (2) complaints of pain in various parts of his body, including his torso, neck, and face; these injuries healed within a few days of the alleged assault (although Plaintiff asserts that his ribs gave him some discomfort for a few weeks thereafter);

---

[20]       (*See generally* Dkt. No. 1, ¶¶ 13, 16, 21, 22, 24, 30, 31, 34, 35, 37, 39, 41, 42.)

• Plaintiff's injuries from the alleged assault on **April 2, 2000**, consisted of (1) a swollen

face, (2) a period of unconsciousness, and (3) some headaches;

• Plaintiff's injuries from the alleged assault on **July 26, 2000**, consisted of (1) a two-

centimeter deep laceration on his forehead (through or above his left eyebrow), which

required six stitches to close, and (2) complaints of pain in his forehead and jaw;

Plaintiff's stitches were removed after about a week; and

• Plaintiff's injuries from the alleged assault on **September 17, 2000**, consisted of (1)

some bruises and lumps on his head, back and neck, (2) complaints of pain in his back

and neck (but no complaints of numbness or tingling), and (3) complaints of blood in his

urine (although no such blood was found during a subsequent urine test); Plaintiff's

injuries healed within about two months of the alleged assault.[21]

Among the several conditions that bear on the seriousness of a prisoner's medical

condition are the following: "[1] the existence of an injury that a reasonable doctor or patient

would find important and worthy of comment or treatment; [2] the presence of a medical

condition that significantly affects an individual's daily activities; or [3] the existence of chronic

and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702-703 (2d Cir. 1998) [internal

quotations and citation omitted].

Here, there is a some evidence (e.g., the notations contained in Plaintiff's medical

records) that Plaintiff did not report (nor, consequently, did any medical staff treat) some of his

alleged injuries at the time of his medical examinations.  Of course, Plaintiff would argue that the

---

[21]     I note that two of the medical records that Defendant Laventure submitted
(apparently to show the results of Plaintiff's urine test on or about September 18-19, 2000)
appear to belong not to Plaintiff but to another person.  (Dkt. No. 66, Part 9 at 32-33.)

lack of notations about certain injuries in his medical records resulted not from his failure to comment on those injuries but from a failure by staff to record those injuries (and indeed a conspiracy among staff to cover up those injuries).  More pertinent, I think, in assessing the seriousness of Plaintiff's medical condition are the other two factors stated above.  Specifically, there is little or no evidence that these injuries significantly affected at the time (or now) Plaintiff's daily activities.  In addition, there is little or no evidence that Plaintiff experienced chronic and substantial pain as a result of these injuries.

As a result, I find that the vast majority of the above injuries (e.g., Plaintiff's lumps, bumps, bruises, scratches, minor cuts and temporary pains) are not, when considered either alone or together, sufficiently serious for constitutional purposes.[22]  The only injuries that give me pause are (1) the injuries sustained on April 2, 2000, which caused Plaintiff to experience a period of unconsciousness and subsequent headaches, (2) the injuries sustained on July 26, 2000, which included a two-centimeter deep laceration on his forehead that required six stitches to

---

[22]       *See Benitez v. Straley*, 01-CV-0181, 2006 U.S. Dist. LEXIS 6382, at *8, 10, 33 (S.D.N.Y. Feb. 16, 2006) (cut on plaintiff's lips, cut on plaintiff's head, and "severe cuts" to plaintiff's wrists--none of which required stitches--did not constitute a medical condition that was sufficiently serious for purposes of Eighth Amendment, even if plaintiff's allegations were assumed to be true); *Rodriguez v. Mercado*, 00-CV-8588, 2002 U.S. Dist. LEXIS 16057, at *8, 24 (S.D.N.Y. Aug. 28, 2002) (bruises to plaintiff's head, back and wrists, accompanied by back pain and migraines but no loss of consciousness, did not constitute a medical condition that was sufficiently serious for purposes of Eighth Amendment); *Montavon v. Town of Southington*, 95-CV-1141, 1997 U.S. Dist. LEXIS 21883, at *10-11 (D. Conn. Sept. 29, 1997) (plaintiff's cuts and scrapes, unaccompanied by profuse bleeding or other conditions, did not constitute a medical condition that was sufficiently serious for purposes of Fourteenth Amendment); *Sanford v. Hayden*, 92-CV-7629, 1994 U.S. Dist. LEXIS 21265, at *3, 21 (S.D.N.Y. Aug. 29, 1994) (cuts, bruises, and abrasions, which were not cleaned, cap for tooth, which was not replaced, and blurred vision and headaches due to fact that glasses were not replaced, did not constitute a medical condition that was sufficiently serious for purposes of either Eighth or Fourteenth Amendment).

close, and (3) the injury (sustained on September 17, 2000), which (allegedly) led to the presence

of blood in Plaintiff's urine.  While I find authority suggesting that such injuries may not be

sufficiently serious for constitutional purposes,[23] I also find authority suggesting that they may be

sufficiently serious.[24]

        As a result, out of an abundance of caution, I will assume for the sake of argument that

Plaintiff's injuries sustained on April 2, 2000, July 26, 2000, and September 17, 2000, are

_____

        [23]     *See, e.g., Rodriguez v. Westchester County Jail Corr. Dept.*, 98-CV-2743, 2003
U.S. Dist. LEXIS 6509, at *2, 15-16 (S.D.N.Y. Apr. 17, 2003) (cut above eye, which cut was
three centimeters long and two millimeters deep and required "butterfly stitches," did not
constitute a medical condition that was sufficiently serious for purposes of the Eighth
Amendment); *Brown v. Picarelli*, 96-CV-1222, 2003 U.S. Dist. LEXIS 6500, at *22-23
(S.D.N.Y. Apr. 15, 2003) ("cut across [plaintiff's] right ear, face and the back of his head [which
wounds were cleaned, stitched up, wrapped in gauze, and stopped from bleeding, and whose
swelling was treated with Tylenol]" did not constitute a medical condition that was sufficiently
serious for purposes of the Eighth Amendment); *Reyes v. Turner*, 93-CV-8951, 1996 U.S. Dist.
LEXIS 2504, at *9-10 (S.D.N.Y. March 5, 1996) (the presence of blood in plaintiff's urine did
not constitute a medical condition that was sufficiently serious for purposes of the Eighth
Amendment where a nurse determined that plaintiff was "stable, not in acute distress, and not
acutely ill").

        [24]     *See, e.g., Ellis v. Guarino*, 03-CV-6562, 2004 U.S. Dist. LEXIS 16748, at *33-34
(S.D.N.Y. Aug. 25, 2004) ("[S]welling on [plaintiff's] face, contusions on both ears and on his
forehead, abrasions on his shoulder, a one millimeter laceration in his right eye, and . . . blurred
vision, headaches, dizziness and ringing in [plaintiff's] ears, the latter of which occurred several
days [after the attacks in question]" constituted a medical condition that was sufficiently serious
for purposes of the Eighth Amendment); *Lasher v. City of Schenectady*, 02-CV-1395, 2004 U.S.
Dist. LEXIS 14871, at *16-17 (N.D.N.Y. Aug. 3, 2004) (McAvoy, J.) (broken nose that was
profusely bleeding for two hours might constitute a medical condition that was sufficiently
serious for purposes of the Eighth Amendment) [citing, *inter alia*, *Aldridge v. Montgomery*, 753
F.2d 970, 972-973 (11th Cir. 1985), holding that one-and-a-half-inch cut over detainee's eye that
was bleeding profusely for two-and-a-half hours was a serious medical need]; *Candelaria v.
Coughlin*, 91-CV-2978, 1996 U.S. Dist. LEXIS 2298, at *21-23 (S.D.N.Y. March 1, 1996) (the
presence of blood in plaintiff's urine, which condition was evidenced by plaintiff's medical
records, and which condition resulted in an infection of plaintiff's bladder and kidneys, might
constitute a medical condition that was sufficiently serious for purposes of the Eighth
Amendment).

sufficiently serious for constitutional purposes.  However, I conclude that the other claims

asserted by Plaintiff against the Nurse Defendants (i.e., the claims arising out of the injuries

sustained on February 6, 2000, March 6, 2000, and March 14, 2000) should be dismissed.

### 2.    Deliberate Indifference

In support of their argument that neither Defendant Laventure nor Defendant Gervais

were deliberately indifferent to any of Plaintiff's medical (or psychological) needs, the Nurse

Defendants correctly rely on Plaintiff's deposition testimony, Defendant Laventure's affidavit

testimony, Defendant Gervais's affidavit testimony, and Plaintiff's medical records.  (Dkt. No.

66, Part 11 at 13-16.)

Again, although the Nurse Defendants generally reference, in their memorandum of law,

the factual assertions made by Plaintiff in his verified Complaint about the (alleged) neglect and

indifference exhibited by the Nurse Defendants (and others) during his medical treatment at

Albany C.F. following the aforementioned six (alleged) assaults, the Nurse Defendants do not

appear to treat those sworn factual assertions as evidence.  As I stated above, even if I were to

treat those sworn factual assertions as evidence, I would find that those factual assertions (to the

extent they are material to Defendants' motion) either actually support Defendants' Rule 7.1

Statement or are of no use in opposing that Rule 7.1 Statement due to defects in the verified

Complaint.  Generally, the three most common defects that I observe are that (1) the factual

assertions are not based on personal knowledge (but speculation), (2) the factual assertions are

entirely conclusory, or (3) the factual assertions are so unsubstantiated, self-contradictory, and/or

implausible that no reasonable juror would undertake the suspension of disbelief necessary to

credit them.[25]

Briefly, the evidence of record established the following undisputed facts:

• During the hours following the alleged assault on Plaintiff on **February 6, 2000**,[26]
Plaintiff was examined in the Albany County C.F. medical unit by Defendant Laventure, who
noted the findings of his examination in Plaintiff's medical records, and offered Plaintiff an ice
pack to treat his injuries; before this examination, Plaintiff was provided pain medication
(Tylenol) by another member of the medical staff, and during the following weeks, Plaintiff was
also provided pain medication (Motrin) by another member of the medical staff;

• During the hours following the alleged assault on Plaintiff on **March 1, 2000**,[27] Plaintiff
was examined in his cell by Defendant Gervais, who noted the findings of her examination in
Plaintiff's medical records, and provided Plaintiff with pain medication (Tylenol) and an ice pack
to treat his injuries; during the following days, Plaintiff's wrist was treated by other members of
the medical staff;

• During the hours following the alleged assault on Plaintiff on **March 14, 2000**, Plaintiff
was examined by a nurse (other than the two Nurse Defendants) from the Albany County C.F.
medical unit;

_____

[25]       (Dkt. No. 1, ¶¶ 16, 23, 24, 28, 31, 35, 39.)

[26]       It appears from Plaintiff's verified Complaint and medical records (and the
uncertain, speculative and self-contradictory testimony contained in Plaintiff's deposition
transcript) that this examination occurred at about 9:30 a.m. on February 6, 2000 (about thirty
minutes following the alleged assault on Plaintiff at about 9:00 a.m.).

[27]       It appears from Plaintiff's verified Complaint, medical records, and deposition
testimony that this examination occurred at about 8:40 p.m. on March 1, 2000 (less than two
hours following the alleged assault on Plaintiff at about 7:00 p.m.).

• During the hours following the alleged assault on Plaintiff on **April 2, 2000**, Plaintiff was examined by a nurse (other than the two Nurse Defendants) from the Albany County C.F. medical unit;

• During the hours following the alleged assault on Plaintiff on **July 26, 2000**, Plaintiff was examined by medical personnel (other than the two Nurse Defendants) from the Albany County C.F. medical unit, and he received an ice pack, pain medication (Tylenol), and six stitches to his forehead; and

• During the hours following the alleged assault on Plaintiff on **September 17, 2000**,[28] Plaintiff was examined in his cell by Nurse Gervais, who noted the findings of her examination in Plaintiff's medical records, and offered Plaintiff an ice pack and pain medication (Motrin) to treat his injuries; on the next day, he was treated by a physician's assistant from the Albany County C.F. medical unit, who ordered a urine test (for the presence of blood), whose results were negative; and on the following day, he was treated by another member of the facility medical staff; he was transferred to another correctional facility on or about September 29, 2000.

Thus, of the six instances of medical treatment about which Plaintiff complains, only three of those instances of treatment (i.e., on February 6, 2000, March 1, 2000, and September 17, 2000) involve one of the two Nurse Defendants. However, none of these three instances of medical treatment establish a claim for deliberate indifference against the Nurse Defendants. Rather, the evidence demonstrates that, on each of the three dates in question, one of the two

---

[28]     It appears from Plaintiff's verified Complaint and medical records (and the non-responsive and vague testimony contained in Plaintiff's deposition transcript) that this examination occurred at about 6:30 p.m. on September 17, 2000 (about ninety minutes following the alleged assault on Plaintiff at about 5:00 p.m., when he was returning from recreation).

Nurse Defendants examined Plaintiff, recorded the findings of his or her examination in

Plaintiff's medical records, and treated Plaintiff (providing Plaintiff with ice packs and/or pain

medication), within hours of the alleged assaults.  Furthermore, on each of the instances, Plaintiff

was treated by other members of the facility medical staff before and/or after being treated by one

of the Nurse Defendants.[29]  Based on the record before me, I simply cannot find any evidence that

the Nurse Defendants exhibited the sort of intentional or reckless disregard that is required to

satisfy the second part of the above two-part test.[30]  I note that, to the extent that Plaintiff is

alleging that the Nurse Defendants were merely careless or neglectful in their care of him (and in

their record keeping), such allegations fail to state a claim for deliberate indifference since such

*negligence* is not actionable under Section 1983.[31]

    Even if Plaintiff had established deliberate indifference by the Nurse Defendants during

three instances of medical treatment, only one of those instances of medical treatment (i.e., on

----

[29]    (*See, e.g.*, Dkt. No. 66, Part 5 at 31-39 [containing Plaintiff's deposition testimony in which he admits that he received care from "an Indian lady," who gave him Tylenol, before he received care from Defendant Laventure on 2/6/00]; Dkt. No. 66, Part 6 at 57-58 [containing Plaintiff's deposition testimony in which he admits that, about one to three days after 3/1/00, he submitted several sick call requests regarding his wrist, some of which were answered]; Dkt. No. 66, Part 6 at 100 & Part 7 at 101 [containing Plaintiff's deposition testimony in which he admits that he received treatment for his complaints of blood in his urine in the weeks after 9/17/00]; Dkt. No. 66, Part 9 at 6 [containing notes of such follow-up treatment on 9/18/00], 9 [containing notes of such follow-up treatment on 9/18/00 and 9/19/00], 16 [containing notes of such follow-up treatment on 2/21/00].)

[30]    *See Rodriguez*, 2002 U.S. Dist. LEXIS 16057, at *24, 29 (no deliberate indifference where nurse treated inmate's bruises to his head, back and wrist with Tylenol within eight or nine hours of his injury)

[31]    *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

September 17, 2000) was in response to a medical condition that is *sufficiently serious* for constitutional purposes (i.e., the alleged presence of blood in Plaintiff's urine).  As discussed above in Part III.A.1. of this Report-Recommendation, the other two instances of medical treatment (i.e., on February 6, 2000, and March 1, 2000) were not in response to a medical condition that is sufficiently serious for constitutional purposes.  With respect to the treatment on September 17, 2000, there is no evidence that Defendant Gervais denied Plaintiff adequate medical care on that date.  Rather, again, the evidence shows that, within hours of the alleged assault, Defendant Gervais examined Plaintiff, recorded the findings of her examination in Plaintiff's medical records, and offered Plaintiff an ice pack and pain medication.  The adequacy of this treatment is further supported by the fact that Plaintiff's urine subsequently tested negative for the presence of blood.[32]  Furthermore, Plaintiff received treatment from other members of the facility medical staff after receiving treatment by Defendant Gervais.

As to the other three instances of medical treatment (i.e., on March 14, 2000, April 2, 2000, and July 26, 2000), none of them establish (or even state) a claim for deliberate indifference against *the Nurse Defendants* (but rather some other, unidentified members of the facility medical staff).  Plaintiff's apparent legal theory that the Nurse Defendants are somehow liable due to the fact that they were employed in the same medical unit as these unidentified staff members is unavailing.  This is especially true since Plaintiff has not shown that (1) the unidentified "offending" staff members did anything wrong, or (2) the Nurse Defendants even

---

[32]     *See Reyes*, 1996 U.S. Dist. LEXIS 2504, at *3-6, 9-10 (defendant did not exhibit deliberate indifference to plaintiff's complaints about the presence of blood in his urine where defendant examined plaintiff the day after such complaints and did not find anything wrong with plaintiff except for minor scrapes and scratches).

knew of Plaintiff's injuries on the three dates in question.  Any deposition testimony or sworn statement that Plaintiff offers to the contrary is so vague, replete with inconsistencies and improbabilities, unsubstantiated by the record evidence, and indeed flatly contradicted by the entirety of the record evidence that no reasonable juror would undertake the suspension of disbelief necessary to credit that testimony or sworn statement.

Finally, I should say a word about Plaintiff's claim against the Nurse Defendants for denial of adequate psychological care.  That claim fails for numerous reasons: (1) Plaintiff has failed to adduce any evidence that, at any time, he has suffered from a serious psychological condition;[33] (2) Plaintiff has failed to adduce any evidence that, at any time, the Nurse Defendants were aware that he had any serious psychological condition; (3) Plaintiff has failed to adduce any evidence that providing psychological treatment (or referrals for psychological treatment) was within the Nurse Defendants' duties or powers; and (4) indeed, Plaintiff admitted in his deposition that he has no evidence (or even any real claim) against the Nurse Defendants for a denial of adequate psychological care.[34]

In light of the foregoing, I recommend that the Court dismiss all of Plaintiff's claims against the Nurse Defendants for deliberate indifference to a serious medical (or psychological) need.

---

[33]     (*See, e.g.*, Dkt. No. 66, Part 7 at 103 (containing Plaintiff's deposition transcript, in which he admits that he has never been diagnosed with any psychiatric conditions).

[34]     (*See, e.g.*, Dkt. No. 66, Part 7 at 104 (containing Plaintiff's deposition transcript, in which he admits that any claim for inadequate psychological care "wouldn't be against Nurse Gervaish [sic] or Laventine [sic], but the medical department as a whole.").

B.    **Claim of Conspiracy**

Also without any evidentiary support is Plaintiff's claim that the Nurse Defendants

engaged in some sort of unlawful conspiracy to cover up the alleged assaults of Plaintiff by

falsely reporting (or refusing to report) the cause and extent of Plaintiff's injuries.  I agree with

the Nurse Defendants' factual assertions, and legal argument, concerning this claim.  (Dkt. No.

66, Part 11 at 15-16.)  I would only add one point.

I believe that Plaintiff's attempted conspiracy claim, which is asserted under 42 U.S.C. §

1983, should properly be asserted under 42 U.S.C. § 1985.[35]  To maintain an action under Section

1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that

defendants entered into an agreement, express or tacit, to achieve the unlawful end."[36]  Where a

plaintiff does not provide such a factual basis, but only conclusory, vague or general allegations,

such a conspiracy claim fails.[37]

Here, Plaintiff has adduced no evidence establishing such a meeting of the minds (express

or tacit).  Specifically, his deposition transcript is bereft of any such evidence and contains, at

best, only speculation or conclusory assertions.  (*See*, *e.g.*, Dkt. No. 66, Part 7 at 107 [stating that

the Nurse Defendants "were working with the officers, *I believe*"] [emphasis added].)

Furthermore, the Nurse Defendants' affidavits and exhibits contradict the existence of such a

---

[35]    *See Webb v. Goord*, 340 F.3d 105, 110 (2d. Cir. 2003) (construing Section 1983 claim styled as "Conspiracy to Violate Civil Rights" as Section 1985 claim).

[36]    *Webb*, 340 F.3d at 110 [internal quotation marks and citations omitted].

[37]    *Id*. (dismissing conclusory allegation "that any such meeting of the minds occurred among any or all of the defendants"); *Boddie v. Schneider*, 105 F.3d 857, 862 (2d. Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

meeting of the minds.  (*See*, *e.g.*, Dkt. No. 8, ¶¶ 14-18; Dkt. No. 10, ¶¶ 18-22.)

The main problem with Plaintiff's conspiracy claim is that it is premised on the mistaken assumption that the Nurse Defendants had a duty to record, in Plaintiff's medical records, the *cause* of Plaintiff's injuries.  (*See*, *e.g.*, Dkt. No. 1, ¶ 17 [Plf's Compl., alleging that Defendant Laventure "failed to give truthful accounts of the cause and extent of plaintiff's injuries following the [February 6, 2000] beating"], ¶ 24 [alleging that Defendant Gervais "omitted that plaintiff told [her] that correction officers assaulted him within the body of the report in plaintiff's medical records"], ¶ 28 [same], ¶ 39 [same].)

As an initial matter, I note that, because the Nurse Defendants did not observe any of the alleged assaults in question (which fact Plaintiff acknowledges), they did not have any *personal knowledge* of the cause of Plaintiff's injuries, and they would have had to rely solely on Plaintiff's *hearsay* account of the cause of his injuries in recording such information in his medical records.  More important, however, is the fact that, because the Nurse Defendants had no *duty* under the law to record such information in medical records (since that information is not necessary for medical treatment), their "failure" to record any such information in this case cannot serve as evidence of any conspiracy.

Finally, I note that I would reach the same conclusion even if I considered Plaintiff's factual assertions on the subject in his verified Complaint, each of which is either not based on personal knowledge or is entirely conclusory.  (*See generally* Dkt. No. 1, ¶¶ 1, 17, 24, 28, 39, 40, 60, 61 [Plf's Compl., setting forth assertions regarding this alleged conspiracy, which assertions are either speculative or conclusory].)

**ACCORDINGLY**, it is

**RECOMMENDED** that the Nurse Defendants' motion for summary judgment (Dkt. No. 66) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 28, 2006
        Syracuse, New York


George H. Lowe
United States Magistrate Judge